Marshall, C. J.
The Village of Euclid, a municipal corporation, owns and operates a municipal water plant. The Camp Wise Association is a charitable organization incorporated under Ohio laws not for profit. Without reciting from the *208 agreed statement of facts all the purposes for which it was formed, or. the persons who are the beneficiaries of its charities, it is sufficient to say that we have reached the conclusion that it is a “charitable institution, devoted to the relief of the poor, aged, infirm, or destitute persons, or orphan or delinquent children,” in the sense that that expression is employed in Sections 3963 and 14769, General Code of Ohio. Section 3963 provides: “No charge shall be made by the director of public service in cities, or by the board of trustees of public affairs in villages, for supplying water for * * * charitable institutions, devoted to the relief of the poor, aged, infirm, or destitute persons, or orphan or delinquent children,” etc.
Injunction is asked to prevent the trustees of public affairs of the village of Euclid from interfering with or cutting off the water supply and that they be required to supply water and water connections to said association without charge. The case involves a construction of Section 3963, and, in the event the construction is unfavorable to the village, the constitutionality of the section is challenged.
In the court of appeals the cause was heard on appeal on an agreed statement, and judgment rendered in favor of the charitable institution, and the village was enjoined from collecting for water service.
The agreed statement' of facts states that the Camp Wise Association was incorporated in 1907, but it does not appear when it began its benefactions in the village of Euclid, and it does not appear when the village of Euclid was incorporated or when the *209 municipality constructed and began to operate its waterworks system. These dates were probably all omitted, because it is evident from the briefs of counsel that it was not expected that the constitutional amendments of 1912 would have any bearing upon the case.
As to the proper construction of Section 3963, we do not believe it can be seriously contended that .the language of the section does not include such charitable institutions as the Camp Wise Association; neither do we think that it was the purpose and intent of the legislature in the enactment of that section to include only those charitable institutions whose beneficiaries had a legal residence within the village or city.
If the determination of this case turned solely upon a construction of the statute, we would dwell more at length upon this feature of the case, but the conclusion we have reached on the other branch of the case makes it unnecessary to further consider its construction.
The village of Euclid is a municipal corporation incorporated under Ohio laws, and while we are not informed as to the date of its incorporation we have assumed that it has been incorporated since the adoption of the Constitution of 1851. The conclusion we have reached would be the same whether it was organized prior to 1851, or not, but assuming the later date makes it unnecessary to discuss certain .prior decisions of this court. Section 6, Article XIII of the Constitution of 1851, provides: “The general assembly shall provide for the or *210 ganization of cities, and incorporated villages, by general laws, and restrict their power of taxation,” etc. Pursuant to this authority the legislature has from time to time passed general laws pertaining to the organization and government of cities and villages. Among other provisions we find Sections 3955 to 3981, General Code, authorizing the construction, maintenance and regulation of waterworks by municipalities. Except for the authority conferred upon municipalities by the general assembly, pursuant to the above-quoted provision of the Constitution of 1851, the village of Euclid could not legally have constructed its waterworks system. Municipalities do not have the inherent right under the Constitution of Ohio to maintain water departments, and, inasmuch as the power to maintain them must come from the legislature, if constructed since 1851 and prior to the amendment of 1912, we are of the opinion that prior to 1912 the legislature could impose upon municipalities restrictions and conditions relative to waterworks without limit. If the legislature had the power to create, it had the power to destroy, and the power to destroy includes the power to burden or regulate or to impose conditions or restrictions as its judgment shall dictate. It will be no answer to say that the obligation to furnish free water to charitable institutions, and such other restrictions as are included in Section 3963, might become so burdensome as to bankrupt the city or village, because any city or village may exercise the option of owning its own municipal water plant or leaving it to private enterprise. It does not appear that the obligation to furnish free *211 water to charitable institutions was imposed by the legislature after the construction of the Euclid water plant, but, even so, we do not doubt the power of the legislature to impose such a burden. By virtue of the provisions of Section 3677 (13), General Code, municipalities are given the power of eminent domain for the purpose of acquiring property for such purposes, and this attribute of sovereignty could only belong to a municipality, before the amendments of 1912, by virtue of legislative grant. The foregoing statements have been made, not because they have a vital bearing upon the instant case, but because we desire to dispose of this controversy without in any wise disturbing well-settled principles pertaining to the power of the legislature over cities and villages, except in so far as the Constitution of 1851 has been changed by the amendments of 1912.
Counsel for the village of Euclid content themselves with the bare statement that “if the statute is not subject to such interpretation, then it is the claim of the defendant that the statute is invalid and unconstitutional.” No further argument is made upon this point, neither is any particular section of the constitution cited which it is claimed this section transgresses. It has been repeatedly held by this court that a statute will not be declared unconstitutional in case of doubt, but will be sustained unless clearly so; and it has also been repeatedly held that an act will not be declared void as opposed to a spirit supposed to pervade the constitution, but not expressed in words, but that, on the contrary, it must transgress some particular provision of the written *212 constitution. In County of Miami v. City of Dayton, 92 Ohio St., 215, the 7th paragraph of the syllabus is: “Before a court is warranted in declaring a legislative act unconstitutional, it must clearly appear that the statute is obviously repugnant and irreconcilable with some specific provision or provisions of the constitution. If there be a reasonable doubt as to such conflict the statute must be upheld.” While municipalities acquired all their powers of government from legislative enactment under the Constitution of 1851, this cannot be said to be true since 1912 as regards public utilities.
Section 2, Article XVIII, without repealing Section 6, Article XIII, provides: “General laws shall be passed to provide for the incorporation and government of cities and villages; and additional laws may also be passed for the government of municipalities adopting the same;” etc.
Section 3 provides: “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
Section 4 provides: “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise,” etc. (Italics ours.)
*213 We have not quoted the entire text of the foregoing amendments, but the portions quoted sufficiently cover the subject-matter of this inquiry.
Prior to the 1912 amendment, and subsequent to 1851, utilities could only be owned and operated under power specially conferred by legislative enactment, and the power to appropriate property for such purposes was derived by further legislative grant in Section 3677, General Code.
During that period municipalities could not claim and exercise the power thus conferred, without at the same time assuming and discharging the burdens and obligations which the legislature had seen fit to impose upon such municipalities; and it makes no difference that the legislature did not impose the burdens and conditions at the same time and in the same enactment in which the power was conferred. Municipalities which have been incorporated since 1851 under general laws pursuant to Section 6, Article XIII of the Constitution of 1851, owe their existence to the legislature, and are also indebted to the same authority for their corporate powers, and the legislature was within its constitutional right in the enactment of Section 3963 at the time the same was enacted, even though that was subsequent in point of time to the enactment of the sections authorizing municipalities to construct waterworks.
Municipalities not having a waterworks system in 1912 might by virtue of the constitutional amendment appropriate property and proceed to construct a waterworks system free from any legislative conditions or burdens; but assuming that the village of *214 Euclid had built its water system prior to 1912 would it automatically be released and discharged from the burdens theretofore borne? Manifestly it would be unfair and inequitable to compel the village to furnish free water to charitable institutions, when municipalities having constructed their utilities after 1912 would be exempt from similar burdens. It would be the moral duty of the legislature to repeal all laws whose effect may be to create inequalities, but is it necessary to appeal to legislative action to bring about this result ? It is well settled that a later statute by implication repeals a former inconsistent statute, and by virtue of the same doctrine a constitutional amendment inconsistent with the original adoption produces a like result, and if an amendment to the constitution contains provisions inconsistent with a statute theretofore enacted the same doctrine would apply and automatically operate as a repeal.
It cannot, however, be said that Sections 3963, General Code, and 14769, General Code, are inconsistent with Sections 3, 4 and 5 of Article XVIII of the Constitution, 1912. The inequalities resulting are not such as to cause the implication of repeal. We must therefore make further search to find relief from the rigors of those sections.
The sections of the Code under consideration contain many provisions other than the ones having a direct bearing upon this controversy, and as to those provisions, and as to all provisions other than the mere question whether charitable institutions are entitled to free water service, we give no consideration and make no findings. These sections *215 were undoubtedly constitutional in all their provisions at the time they were enacted, and even at this time they are apparently valid on their face. But in determining the constitutionality of a statute the courts may look farther than the measure of power of the legislature at the time of its enactment, and may properly determine its operative effect at any future time. This proposition has received consideration and judicial determination in the case of Castle v. Mason, 91 Ohio St., 296, the first paragraph of the syllabus of which reads: “The constitutionality of a law may be determined by its operative effect, though on its face it- may be apparently valid.”
Section 26, Article II of the Constitution (this not being an amendment), provides: “All laws, of a general nature, shall have a uniform operation throughout the state;” etc.
Manifestly Sections 3963 and 14769, General Code, cannot have a uniform operation throughout the state if utilities constructed or acquired by municipalities before 1912 are burdened with certain onerous conditions, while those constructed or acquired since 1912 are relieved therefrom. If the legislature would not have power to enact those statutes at this time, thereby discriminating between utilities acquired before 1912 and those acquired thereafter, because such an enactment would be a violation of Section 26, Article II, then by parity of reasoning Section 26, Article II, should be given such application to laws enacted prior to 1912, because only by such process can laws be given uniform operation within the spirit and intendment of *216 Section 26, Article II. This leads irresistibly to the conclusion, although by an indirect method, that the sections under construction in this cause are a transgression and violation of Section 26 and therefore null and void.
The judgment of the court of appeals will therefore be reversed, and judgment rendered for plaintiffs in error.

Judgment reversed, and judgment for plaintiffs in error.

Johnson, Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.